# EXHIBIT A



**Dykema Gossett PLLC**
Comerica Bank Tower
1717 Main Street, Suite 4200
Dallas, TX 75201
WWW.DYKEMA.COM
Tel:  (214) 462-6400
Fax: (214) 462-6401

**Israel R. Silvas**
Direct Dial: (214) 698-7812
Direct Fax: (855) 271-2233
Email: ISilvas@dykema.com

January 10, 2022

**Via Email, First Class, and Certified
Mail Return Receipt Requested**

Brian Werner Ferris, Chairman & President
Wayne Camille, Vice President
Emily Owen, Vice Chair
Natasha Chab, Secretary & Treasurer
National Foundation for Rescued Animals
d/b/a Tiger Creek Animal Sanctuary
17552 Farm to Market Road 14
Tyler, Texas 75706
tigress1@tigerlink.org
Tiger1@tigerlink.org
animalcare@tigerlink.org

Deb Haaland, Secretary
Secretary of the Interior
U.S. Department of the Interior
1849 C St. N.W.
Washington, D.C. 20240
exsec@ios.doi.gov

Martha Williams, Principal Deputy Director
U.S. Fish and Wildlife Service
1849 C Street NW, Room 3331
Washington, DC 20240-0001
martha_williams@fws.gov

Re:     **Notice of Intent to File Citizen Suit Pursuant to Endangered Species Act**

Dear Brian Werner Ferris and Emily Owen:

On behalf of the Animal Legal Defense Fund ("ALDF")—and its more than 300,000 members and supporters—and pursuant to Section 11 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g), this letter constitutes notice that ALDF intends to file suit after the expiration of the sixty (60) day notice period against National Foundation for Rescued Animals d/b/a Tiger

Creek Animal Sanctuary ("TCAS"), a not-for-profit 501(c)(3) corporation, located at 17552 Farm to Market Road 14, Tyler, Texas 75706; Brian Werner Ferris as an individual and in his capacity as Chairman and President, principal, and director of TCAS; and Emily Owen as an individual and in her capacity as Vice Chair and Executive Director of TCAS, (collectively, "Tiger Creek") for violating the ESA's prohibition against "take" by killing, wounding, harming, and/or harassing numerous animals at Tiger Creek and for violating the ESA by transferring members of listed endangered and/or threatened species across state lines without the applicable permits. ALDF has engaged the law firm of Dykema Gossett, PLLC to file and prosecute any such suit, if necessary.

Extensive photographic and video evidence, first-hand observations, and government analyses, including an official warning issued by the U.S. Department of Agriculture ("USDA"), indicate that individual members of ESA-listed species at Tiger Creek are mentally and physically suffering in cramped, unclean, and unsafe conditions and are not receiving adequate, timely veterinary care. This letter provides a summary of some of the evidence that we have obtained that demonstrates Tiger Creek is in violation of the ESA.

ALDF is fully prepared to pursue litigation of these claims and to obtain injunctive relief against Tiger Creek to ensure each and every animal at Tiger Creek is transferred to an appropriate sanctuary environment that can provide the animals with a more appropriate, safe, and naturalistic space to express species-typical behavior. In an effort to avoid the time and cost of litigation, however, ALDF is prepared to enter into a settlement of these claims with Tiger Creek. Specifically, ALDF is prepared to facilitate the transfer of all animals at Tiger Creek to reputable sanctuaries ***at no cost*** to Tiger Creek. ALDF will handle all arrangements for such a transfer, including securing and paying for the placement, transport, and veterinary care for such a transfer.

## I. The ESA Imposes Heightened Protections for Threatened and Endangered Animals.

The ESA protects federally endangered and threatened species in "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 180 (1978). The ESA establishes a scheme under which any species that is defined as "endangered" or "threatened" is protected from various private and governmental activities that will or may jeopardize its continued existence. Am. Jur. 2d, Fish, Game, & Wildlife Conservation § 64.

Agencies implementing the ESA, including the U.S. Fish and Wildlife Service ("FWS"), decide whether species should be listed as "threatened" or "endangered" under the ESA. *See* 16 U.S.C. § 1533(a). Once a species is designated as such, it receives the ESA's protections. *See Safari Club Int'l v. Salazar (In re Polar Bear ESA Listing & Section 4(d) Rule Litig.—MDL No. 1993)*, 709 F.3d 1, 2 (D.C. Cir. 2013).

Section 9 of the ESA imposes a blanket prohibition on the "take" of any endangered or threatened species. 16 U.S.C. § 1538(a); 50 C.F.R. § 17.31(a). "The ESA expansively defines the term 'take' as 'to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct.'" *Hill v. Coggins*, 867 F.3d 499, 508 (4th Cir. 2017) (quoting 16 U.S.C. § 1532(19)). Congress intended for "take" to be defined "in the broadest possible manner to include every conceivable way in which a person can 'take' or attempt to 'take' any fish or wildlife." *Animal Welfare Inst. v. Beech Ridge Energy LLC*, 675 F. Supp. 2d 540, 561 (D. Md. 2009) (quoting S. Rep. No. 93-307, at 7 (1973)).

The FWS has issued regulations regarding some of the terms composing the definition of "take." 50 C.F.R. § 17.3. The agency defines "harm" as "an act which actually kills or injures wildlife." *Id.* The agency also defines "harass," which means "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns, which include, but are not limited to, breeding, feeding, or sheltering." *Id.* The ESA's "take" prohibition applies to members of listed species living in the wild *and* in captivity. *See, e.g., Graham v. San Antonio Zoological Soc'y*, 261 F. Supp. 3d 711, 741 (W.D. Tex. 2017); Proposed Amendment to the Endangered Species Act, 79 Fed. Reg. 4313, 4317 (Jan. 27, 2014) (codified at 50 C.F.R. pt. 224).

The ESA further makes it unlawful for any person to "deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever and in the course of a commercial activity, any [endangered] species" absent a valid permit. 16 U.S.C. §1538(a)(1). The ESA defines "commercial activity" as "all activities of industry and trade, including, but not limited to, the buying or selling of commodities and activities conducted for the purpose of facilitating such buying and selling: [p]rovided, however, [t]hat it does not include exhibition of commodities by museums or similar cultural or historical organizations." 16 U.S.C. §1532(2). In order to engage in transfer activities as described in 16 U.S.C. §1538(a)(1), parties must apply for a permit with the Secretary of the Interior pursuant to the requirements of 16 U.S.C. § 1539.

Individuals and/or entities violating the ESA risk civil and criminal penalties. 16 U.S.C. §§ 1540(a)–(b). The ESA allows private parties, like ALDF, to bring civil enforcement actions sixty (60) days after providing adequate notice of the violations to both the violator and the Secretary of the Interior. *Id.* § 1540(g). A court that finds violations of the ESA "take" prohibition has the authority to order the removal and relocation of captive animals to other, more protective facilities. *Kuehl v. Sellner*, 887 F.3d 845, 854 (8th Cir. 2018) (holding it was "well within [the district court's] broad equitable powers" to order the transfer of animals to accredited sanctuaries upon finding conditions of the animals' confinement violated the ESA).

## II. Tiger Creek Is Violating the ESA by Transferring Endangered and/or Threatened Species Across State Lines Absent an Applicable Permit.

Tiger Creek has delivered, received, carried, transported, and/or shipped a multitude of endangered and/or threatened species across state lines in violation of the requirements of 16 U.S.C. §§ 1538-1539. For instance, in the past three and a half years alone, Tiger Creek has acquired at least six protected animals out-of-state and transported them in interstate commerce for paid exhibition in Texas, in violation of the ESA. Tiger Creek acquired tigers Pomfret, Singer, and Nati in December 2018, and Ava, Elouise, and Rosie in March 2019, each from Doc Antle in Myrtle Beach, South Carolina. Upon information and belief, Tiger Creek has not obtained an applicable permit from the Secretary of the Interior for its acquisition and transfer in interstate commerce of these endangered animals despite its exhibition of them at its facility. As such, Tiger Creek has violated the "transfer" provision of the ESA. 16 U.S.C. §§ 1538, 1539.

## III. Tiger Creek Is Violating the Endangered Species Act by Harming and Harassing Protected Animals.

Tiger Creek possesses seventeen tigers and two ring-tailed lemurs who are listed as "endangered" under the ESA. 50 C.F.R. § 17.11.[1] Tiger Creek also exhibits two lions, who are either endangered or threatened depending on the subspecies, but nonetheless subject to the same "take" restrictions under the ESA's implementing regulations. *Id.* § 17.11(h); *see also id.* § 17.40(r) (articulating special rule applying protections to lion subspecies). Tiger Creek additionally exhibits pumas (*Puma concolor*), servals (*Leptailurus serval*), and bobcats (*Lynx rufus*), each of whom ALDF believes are endangered. *See* 50 C.F.R. § 17.11(h). By denying each of the animals timely and appropriate veterinary care, safe and sanitary enclosures, and adequate environmental enrichment, Tiger Creek harms and harasses each of the ESA-protected species it exhibits.

### A. Tiger Creek Denies Animals Timely and Adequate Veterinary Care.

Tiger Creek's failure to provide adequate and timely veterinary care to multiple big cats, such as tigers and lions, and other protected animals housed on its premises amounts to a "take" under the ESA. *See Kuehl v. Sellner*, 161 F. Supp. 3d 678, 716 (N.D. Iowa 2016) (The "failure to provide timely and appropriate veterinary care has delayed or prevented adequate treatment, thus resulting in 'injury' to the tigers. Any act which injures a protected animal constitutes 'harm' within the definition of 'take' in the Endangered Species Act."); *see also* 50 C.F.R. § 17.3.

---

[1] To strengthen the protections for captive tigers under the ESA, FWS issued a rule removing non-purebred tigers (inter-subspecific crossed or generic tigers) from the list of species exempt from registration under the Captive-bred Wildlife regulations. *See* U.S. Captive-Bred Inter-subspecific Crossed or Generic Tigers, 81 Fed. Reg. 19,923 (Apr. 6, 2016) (codified at 50 C.F.R. pt. 17).

DYKEMA

On information and belief, on numerous occasions, Tiger Creek has delayed the provision of appropriate veterinary care to sick and/or injured animals. On others, it delayed or denied timely or appropriate euthanasia of dying animals until they were so debilitated that they were unable to move or eat, resulting in them lying in their own feces and urine—sometimes for days—until their deaths.

As recently as April 8, 2021, the USDA issued a "critical" citation to Tiger Creek for its failure to provide "[a]ccurate and timely communication with a veterinarian" in treating a serval named Dakari. *See* Exhibit "1", which is a true and correct copy of a USDA Inspection Report dated April 8, 2021. The serval "ultimately died" after Tiger Creek delayed seeking veterinary care for a week following his illness. *Id.* The USDA inspector "felt the animal should have received veterinary care sooner than [the serval] did." *Id.*[2]

The following is a non-exhaustive list of similar instances in which Tiger Creek is killing, wounding, harming, and harassing ESA protected animals through its denial of timely and appropriate veterinary care.

*Tibor: Tiger*

In September 2017, Tiger Creek received a tiger named Tibor. After his arrival, Tibor's condition declined and he refused to eat. By November 2017, Tibor had lost consciousness and could no longer move. By the end of November 2017, Tibor passed away after spending hours in the rain, laying on his side and in his own urine, shaking. *See* Exhibit "2", a fair and accurate depiction of Tibor before his death on November 27, 2017. On information and belief, Tiger Creek failed to provide Tibor with timely and appropriate veterinary care during and up until his death.

*Coco: Puma*

In May 2017, a puma named Coco began limping. For two weeks the limp continued to grow worse, until Tiger Creek's attending veterinarian determined that Coco had a fractured leg, and he received failed surgery. Within the next few months, Coco underwent an additional surgery in attempt to fix his leg, but it was again unsuccessful. On August 28, 2017, Coco's leg had to be amputated.

[2] A "critical" noncompliance is an Animal Welfare Act ("AWA") violation that is causing, or has caused, a serious or severe adverse effect on the health and well-being of an animal. *See* USDA, *Animal Care Inspection Guide* § 2.4.6 (Dec. 7, 2021).

In the beginning of 2018, Coco started to show signs that his other front leg was injured.[3] By March of 2018, Coco could not walk without a limp. By June of 2018, Coco began dragging his remaining front leg in effort to move around his enclosure. Four days elapsed where Coco was predominantly immobile until he was eventually euthanized. On information and belief, Tiger Creek failed to provide Coco with timely and appropriate veterinary care, resulting in his injury and ultimately his death.

*Amir: Tiger*

In January 2018, Tiger Creek's attending veterinarian noted Amir, a male tiger, "needed a slight increase in weight, with a dental check in the future." On May 9, 2019, records indicate that Amir stopped eating. This continued through June 29, 2019, until he was found dead in his cage. On information and belief, Tiger Creek never gave Amir the prescribed dental check, and between May 9, 2019, and June 29, 2019, Tiger Creek failed to provide Amir with timely and appropriate veterinary care, resulting in his death.

*Lexie: Tiger*

In early 2018, a tiger named Lexie became ill and experienced a decline in her mobility. On one occasion, Lexie was observed laying on her side and began urinating where she lay, causing wounds to fester on her legs. By February 2018, Lexie could no longer move and was ultimately euthanized. On information and belief, Tiger Creek failed to provide Lexie with timely and appropriate veterinary care, resulting in her injury and ultimately her death.

*Sierra: Tiger*

On August 20, 2018, Tiger Creek's attending veterinarian euthanized a tiger named Sierra. On information and belief, to euthanize Sierra, the veterinarian instructed one of the keepers to hold Sierra down while the veterinarian attempted to inject anesthesia directly into Sierra's heart. Sierra immediately started twitching and convulsing. This continued for approximately five minutes as Sierra died a slow and protracted death. On information and belief, Tiger Creek failed to provide Sierra with appropriate veterinary care, resulting in her injury and death.

*Greg: Tiger*

Greg, a male tiger exhibited by Tiger Creek, developed a distended abdomen in September 2018 after refusing food for several weeks. Greg was finally euthanized on October 2, 2018. On

---

[3] Lameness and fractures are often signs of metabolic bone disease, which is a general term for conditions that cause weak bones. Metabolic bone disease is common in large cats fed an inappropriate and deficient diet. The mobility problems that widely afflict the animals at Tiger Creek suggest that they do not receive adequate nutrition, in violation of the ESA. *See also* Section III.C, *infra*.

information and belief, Tiger Creek failed to provide Greg with timely and appropriate veterinary care, resulting in his death.

*Kumari: Tiger*

In June 2019, a tiger named Kumari began showing signs of illness, including a swollen abdominal area. On September 19, 2019, Tiger Creek staff observed Kumari eating dirt. Five days later, Kumari underwent an ovariohysterectomy. Immediately following the surgery, Tiger Creek left Kumari unmonitored in her transfer crate in the maintenance building for over twelve (12) hours. Kumari died, still locked inside her transfer cage, waiting to be put back in her enclosure. On information and belief, Tiger Creek failed to provide Kumari with timely and appropriate veterinary care, resulting in her injury and death.

*Nati: Tiger*

In December 2019, Nati, a one and a half year-old female tiger, developed a cyst approximately the size of a quarter on her lower abdomen. On information and belief, Tiger Creek refused to provide Nati with timely veterinary care, and as such, the cyst continued to grow in size until it burst open on December 24, 2019. *See* Exhibit "3", a fair and accurate depiction of Nati after her cyst ruptured on December 24, 2019.

Tiger Creek's attending veterinarian did not attend to Nati in person, but rather advised Tiger Creek to use "hydrotherapy," which consisted of hosing down the affected area with water each day. Over the next twenty-one (21) days, Nati's wound grew to the size of a dinner plate. *See* Exhibit "4", which is a fair and accurate depiction of Nati's ruptured cyst in January 2020. It was not until January 16, 2020, that Nati was seen by a veterinarian, when the attending veterinarian visited Tiger Creek to observe another animal. On information and belief, Tiger Creek failed to provide Nati with timely and appropriate veterinary care, resulting in her injury.

*Zuri: Serval*

In early 2019, Tiger Creek placed a serval named Zuri on public display. Zuri began to chew on her tail. Despite Zuri's obvious psychological distress, Tiger Creek kept Zuri on display. Zuri eventually bit the tip of her tail off. On information and belief, Tiger Creek failed to provide Zuri with timely and appropriate veterinary care, resulting in her injury.

*Simba: Serval*

In late 2019, Tiger Creek moved a serval named Simba from his normal enclosure to a small, off-exhibit enclosure. Shortly after, Simba stopped eating and appeared lethargic. Tiger Creek refused to allow Simba to be seen by a veterinarian. Simba spent the next two days vomiting and was observed over the proceeding days as appearing severely dehydrated and largely

immobile. Upon information and belief, Simba eventually died without veterinary intervention. On information and belief, Tiger Creek failed to provide Simba with timely and appropriate veterinary care, resulting in his injury and ultimately his death.

* * * *

The nineteen tigers and lions, four bobcats, three pumas, two ring-tailed lemurs and one serval who remain at Tiger Creek are subject to the risk of continued killing, as well as wounding, harm, and harassment through Tiger Creek's denial of timely and adequate veterinary care. The veterinary care denial is not AWA compliant.

AWA regulations require that Tiger Creek secure an attending veterinarian with species-specific training and experience. *See* 9 C.F.R. § 2.40(a) ("Each dealer or exhibitor shall have an attending veterinarian who shall provide adequate veterinary care to its animals in compliance with this section."); 9 C.F.R. § 1.1 (defining attending veterinarian as a person who "has received training and/or experience in the care and management *of the species being attended*") (emphasis added). Further, mechanisms of direct and frequent communication between a facility and veterinarian are required in a program of adequate veterinary care so that timely and accurate information concerning animal health, behavior, and well-being is conveyed to the attending veterinarian. *Kuehl,* 161 F. Supp. 3d at 715 (citing 9 C.F.R. § 2.40(b)(3)). The AWA regulations further provide that "each exhibitor shall establish and maintain programs of adequate veterinary care that include . . . [t]he use of appropriate methods to prevent, control, diagnose, and treat diseases and injuries, and the availability of emergency, weekend, and holiday care." 9 C.F.R. § 2.40(b)(2).

Upon information and belief, Tiger Creek has not complied with these regulations. As the above examples show, when any of Tiger Creek's animals become sick, Tiger Creek does not provide them with adequate and timely care.

Additionally, "[p]reventative care is fundamental to an adequate veterinary plan." *People for the Ethical Treatment of Animals, Inc. ("PETA") v. Tri-State Zoological Park of W. Maryland, Inc.,* 424 F. Supp. 3d 404, 414 (D. Md. 2019), *aff'd*, 843 Fed. Appx. 493 (4th Cir. Jan. 29, 2021), *cert. denied*, 141 S. Ct. 2854 (June 8, 2021). "Preventative care requires, at a minimum, routine physical examination, blood tests, fecal examinations, and immunizations." *Id.* On information and belief, Tiger Creek provides little to no routine or preventative care for its remaining living animals. For example, Tiger Creek has not incorporated any preventative care for ring-tailed lemurs in its AWA-required program of veterinary care.

Timely and adequate veterinary care is fundamental to the physical and psychological well-being of any captive animal. Denying animals timely and adequate veterinary care creates a likelihood that their condition will worsen, and in some cases, results in an animal's death. By failing to provide ESA protected animals with timely and adequate veterinary care, Tiger Creek

has "taken" and continues to "take" these animals by killing, wounding, and harming and harassing them in violation of the ESA. *Kuehl*, 161 F. Supp. 3d at 716; *see also* 50 C.F.R. § 17.3.

**B. Tiger Creek Denies Animals a Safe, Sanitary Environment.**

Tiger Creek's ongoing failure to provide animals with a clean, sanitary environment constitutes a prohibited "take" in violation of Section 9 of the ESA. 16 U.S.C. § 1538(a)(1)(B). Tiger Creek has failed, and continues to fail, to keep the animals' enclosures free of feces and pests, which places the animals' health and welfare at risk and directly inhibits their ability to engage in normal behavioral patterns.

Tiger Creek does not provide the big cats and other protected animals with the basic necessities of clean living conditions. Visitors have noted that the animals are kept in filthy conditions and the facility reeks of urine.[4] They have also noted animal enclosures are filled with "ashy" feces, which indicates that the feces have remained in the enclosure for extended periods. As recently as August 2021, the USDA cited Tiger Creek for its failure to remove excessive accumulation of feces, hair, and debris in one of its bobcat's enclosures for 10 days. *See* Exhibit "5", which is a true and correct copy of a USDA Inspection Report dated August 24, 2021. The accumulation of feces and waste in the animals' enclosures not only puts their health and welfare at risk, but also violates the AWA. 9 C.F.R. § 3.84 ("Excreta and food waste must be removed from inside each indoor primary enclosure daily . . . If the species of the nonhuman primates housed in the primary enclosure engages in scent marking, hard surfaces in the primary enclosure must be spot-cleaned daily."). Tiger Creek has additionally failed to ensure the animals' pools are clean and sanitary. In August 2021, the USDA noted several pools in animal enclosures appeared to be "a very dark greenish color" and posed a health hazard to the animals. *See* Exhibit "5."

Tiger Creek has also exposed lions, tigers, and ring-tailed lemurs to heightened risk of injury and illness by failing to implement appropriate COVID-19 protocols. In December 2020, Tiger Creek allowed a tiger cub, Sitaara, to be exposed to infected individuals without protective equipment or other safety measures to protect them from injury. *See* Exhibit "6", which is a true and correct copy of PETA's USDA complaint filed on January 15, 2021. Tiger Creek similarly has failed to implement protective measures when handling at-risk primates such as ring-tailed lemurs, who have been observed interacting with unmasked employees during the COVID-19 pandemic despite a risk of virus transmission. *See* Exhibit "7", which is a true and correct copy of a screenshot featuring an unmasked Emily Owen handling a ring-tailed lemur on July 23, 2020.

Tiger Creek has placed protected animals' health and welfare at risk and inhibited the animals' ability to engage in normal behavioral patterns by failing to provide animals with clean, sanitary environments. By depriving these animals with a safe and sanitary environment, Tiger

[4] Overwhelming odors can interfere with normal behavioral patterns, such as, *inter alia*, ring-tailed lemurs' practice of scent-marking their environment.

Creek's actions kill, wound, harm, and harass the protected animals it exhibits, and thus constitute a "take" in violation of the Section 9 of the ESA. 16 U.S.C. § 1538(a)(1)(B).

**C. Tiger Creek Denies Animals Adequately Implemented Nutrition Protocols.**

Tiger Creek has denied protected animals an adequate and appropriate diet, thus interfering with their normal feeding behaviors. The AWA requires that food "be wholesome, palatable, and free from contamination and of sufficient quantity and nutritive value to maintain all animals in good health. The diet shall be prepared with consideration for the age, species, condition, size, and type of the animal." 9 C.F.R. § 3.129(a).

Tiger Creek has failed to provide food sufficient to meet the species-specific nutritional requirements of the animals. It has also failed to provide food in a safe manner for the animals to avoid injury. On information and belief, multiple animals have experienced significant health issues from the diet they receive at Tiger Creek, such as blockages, bloody stool, and choking. In 2017, a lion named Max needed emergency surgery due to a stomach blockage believed to be attributed to his diet of whole chicken. Tiger Creek's practice of feeding the large felids, such as tigers and lions, chicken increases the risk of their injury. Indeed, industry guidelines discourage feeding large felids high percentages of poultry because the resulting diet may be nutritionally imbalanced.[5]

Proper nutrition and access to potable water are fundamental to the physical and psychological well-being of any captive animal. Denying captive animals a species appropriate diet and access to potable water creates a likelihood of injury to them and significantly disrupts their normal feeding behaviors. Therefore, by failing to provide the animals an adequate and appropriate diet, Tiger Creek has committed and continues to commit a "take" of protected animals by harming and harassing them in violation of the ESA. 16 U.S.C. § 1538(a)(1)(B).

**D. Tiger Creek Denies Animals Adequate Enrichment and Species-Appropriate Enclosures.**

General animal husbandry practices require that any exhibitor who chooses to keep captive animals must provide adequate shelter and enrichment that resembles their natural habitat. *PETA v. Tri-State Zoological Park of W. Maryland, Inc.*, 424 F. Supp. 3d at 414. Tiger Creek's barren living conditions harm and harass all of its protected animals and amount to "take" under the ESA. *See id.*; *see also* 16 U.S.C. § 1538(a)(1)(B).

[5] Global Federation of Animal Sanctuaries, *Standards for Felid Sanctuaries* § N-2.m (July 2013).

**1. Tiger Creek Denies Tigers and Lions Appropriate Opportunities to Engage in Naturalistic Behaviors.**

Tigers are one of the largest living carnivores[6] and their territories range from 27 to 32 square miles for females and 103 to 114 square miles for males.[7] Tigers are long-ranging species, known to travel over 400 miles to reach tiger populations in other areas.[8] Tigers are also avid swimmers and can swim up to 18 miles in a day.[9] Large enclosures with a pool with clean water are "essential for tigers"—they reduce stress and promote naturalistic behavior.[10] The Association of Zoos and Aquariums ("AZA") Tiger Care Manual says that all tiger exhibits should include relatively large, complex outdoor space.[11]

Lions typically demand similarly complex enclosures to account for their natural behaviors. Lions' home ranges vary by location from 8–17 square miles to over 800 square miles.[12] Lions travel up to 8 miles a day.[13] Lions are very social, with females and cubs living in prides averaging 4–6 adult females, and up to 8 males who hold lifelong alliance with the pride.[14] The AZA manual sets a minimum of 10,000 square feet for lion enclosures.[15]

Given their natural behaviors, captive felids such as tigers and lions have particularly high needs for environmental enrichment.[16] It takes effort to formulate enrichment plans for tigers and

[6] Grégory Breton & Salomé Barrot, *Influence of Enclosure Size on the Distances Covered and Paced by Captive Tigers (*Panthera tigris*)*, 154 Applied Animal Behav. Sci. 66, 67 (2014), doi:10.1016/j.applanim.2014.02.007.

[7] Achara Simcharoen, Tommaso Savini, George A. Gale, Saksit Simcharoen, Somphot Duangchantrasiri, Sompom Pakpien, & James L. D. Smith, *Female Tiger* Panthera tigris *Home Range Size and Prey Abundance: Important Metrics for Management*, 48(3) ORYX3 370 (2014), doi: 10.1017/S0030605312001408.

[8] Aditya Joshi, Srinivas Vaidyanathan, Samrat Mondol, Advait Edgaonkar & Uma Ramakrishnan, *Connectivity of Tiger (*Panthera tigris*) Populations in the Human-Influenced Forest Mosaic of Central India*, 8(11) PLOS ONE e77980 (2013), doi:10.1371/journal.pone.0077980.

[9] Ronald M. Novak, *Walker's Mammals of the World* 825-828 (1999); *see also* John Seidensticker, Peter Jackson, Sarah Christie, *Riding the Tiger* (1999).

[10] Janice Vaz, Edward J. Narayan, R. Dileep Kumar, K. Thenmozhi, Krishnamoorthy Thiyagesan, & Nagarajan Baskaran, *Prevalence and Determinants of Stereotypic Behaviors and Physiological Stress Among Tigers and Leopards in Indian Zoos*, 12(4) PLoS One e0174711, 21 (2017) doi: 10.1371/journal.pone.0174711.

[11] AZA Tiger Species Survival Plan, *Tiger Care Manual* 11 (2016).

[12] Monika B. Lehmann, Paul J. Funston, Cailey R. Owen & Rob Slotow, *Home Range Utilization and Territorial Behavior of Lions (*Panthera leo*) on Karongwe Game Reserve, South Africa*, 3(12) PLoS One e3998, 4 (Dec. 22, 2008), doi: 10.1371/journal.pone.0003998.

[13] E. Möstl & R. Palme, *Hormones are Indicators of Stress*, 23 Domestic Animal Endocrinology 67, 68 (2002), doi: 10.1016/S0739-7240(02)00146-7.

[14] San Diego Zoo, *Fact Sheet: African lion,* Panthera leo (Aug. 2005).

[15] AZA Lion Species Survival Plan, *Lion Care Manual* 19 (2012).

[16] Thomas Quirke et al., *A Comparative Study of the Speeds Attained by Captive Cheetahs During the Enrichment Practice of the "Cheetah Run"*, 32(5) Zoo Biology 490, 490 (2013), doi: 10.1002/zoo.21082.

lions because of their natural behavior needs, as well as their need for large and complex spaces.[17] For instance, because of the complexity of lions' exploring and hunting in the wild, "it remains difficult to provide fully for this complex array of behaviors within the captive setting."[18]

Captive environments that fail to offer large felids the opportunity to engage in natural behaviors have a detrimental effect on the animals' physical and psychological well-being.[19] Research shows that large and enriched naturalistic enclosures are essential to preventing the onset of stereotypical behavior, which can indicate chronic stress.[20] Enrichments can "enhance captive animals' well-being by stimulating active behaviors and reducing stereotypical behaviors commonly seen in zoo felids."[21] Inducing chronic stress, which can have deleterious effects on an animal's well-being including the animal's immune function, development, and reproductive function, [22] constitutes a "take" under the ESA.[23]

None of Tiger Creek's enclosures display the size or complexity necessary to allow the tigers, lions, and other protected felids to engage in normal behaviors. On information and belief, during the day, Tiger Creek locks tigers, lions, and other felids out of their lockdowns (covered, indoor enclosures) in order to ensure the animals are visible to guests. Many of these enclosures have no access to grass and do not adequately protect the animals from the elements. This is especially concerning for older animals, who are unable to cool off from the grueling Texas summer sun. Further, the two lions held at Tiger Creek are denied adequate social grouping to account for their natural tendency to live in large groups and prides.

By depriving these protected animals of an environment in which they can express natural behaviors, as well as social grouping and psychological stimulation fundamental to their physical, social, and psychological well-being, Tiger Creek's actions significantly disrupt protected animals' normal behavioral patterns and thus constitute a "take" in violation of the ESA. *See* 16 U.S.C. § 1538(a)(1)(B), (G); 50 C.F.R. §§ 17.11(h), 17.21(c)(1).

---

[17] Leticia S. Resende et al., *The Influence of Feeding Enrichment on the Behavior of Small Felids (*Carnivora: Felidae*) in Captivity,* 26 Zoologiz 601 (2009).
[18] Quirke et al., *supra* note 16.
[19] *See* Kathleen Morgan & Chris Tromborg, *Sources of Stress in Captivity,* 102 Applied Animal Behav. Sci. 262, 264 (2007); *see also* Monika S. Szokalski et al., *Enrichment for Captive Tigers* (Panthera tigris): *Current Knowledge and Future Directions,* 139 Applied Animal Behav. Sci. 1 (2012).
[20] *See* Vaz et al., *supra* note 10.
[21] Amy L. Skibiel, Heather S. Trevino, & Ken Naugher, *Comparison of Several Types of Enrichment for Captive Felids*, 26(5) Zoo Biology 371, 371 (2007), doi: 10.1002/zoo.20147.
[22] Jessica M Keay, Jatinder Singh, Matthew C. Gaunt, & Taranjit Kaur, *Fecal Glucocorticoids and Their Metabolites as Indicators of Stress in Various Mammalian Species: A Literature Review*, 37(3) J. of Zoo & Wildlife Med. 234, 234 (2006), doi: 10.1638/05- 050.1.
[23] Breton & Barrot, *supra* note 6; *see also* 16 U.S.C. § 1538(a)(1)(B), (G).

**2. Tiger Creek Denies Ring-Tailed Lemurs Adequate Environmental Enrichment and Social Grouping.**

Ring-tailed lemurs are found in the wild in the southwest portion of Madagascar. They travel widely in search for food and roam within territories ranging from 14 to 56 acres.[24] Lemurs spend over one-third of their time on the ground, but they are known to spend time in all layers of their natural habitats. Ring-tailed lemurs are highly social animals with advanced cognitive abilities. Unlike some species of lemurs, ring-tailed lemurs live in large social groups ranging in size from 8 to 20 individuals.[25]

Meeting captive lemurs' complex physical and psychological needs includes enabling their socialization with other lemurs and providing them with necessary environmental enrichment. Basic animal husbandry standards require that lemurs in captivity should be housed in groups of at least 4 to 7. *See PETA v. Tri-State Zoological Park of W. Maryland, Inc.*, 424 F. Supp. 3d at 414. Further, the minimum requirements of animal care set forth under the AWA expressly require exhibitors to "develop, document, and follow an appropriate plan for environment[al] enhancement adequate to promote the psychological well-being of nonhuman primates." 9 C.F.R. § 3.81; *see also* 7 U.S.C. § 2143(a)(2). The requirements include provisions for the social housing of primates, which "must be in accordance with the currently accepted professional standards as cited in appropriate professional journals or reference guides, and as directed by the attending veterinarian." 9 C.F.R. § 3.81. If nonhuman primates, including lemurs, are individually housed apart from nonhuman primates of their own or compatible species, then they must be provided special attention regarding enhancement of their environment. *See* 9 C.F.R. § 3.81(c). These mandatory enhancement programs aim to give nonhuman primates "an environment in which they can express the wide range of behaviors practiced by others of their species in nature."[26]

By housing two lemurs, Leonard and Lily, alone without adequate social grouping, Tiger Creek is denying them an environment supporting their species-typical social interaction and play. Housing ring-tailed lemurs without adequate socialization does not meet the generally accepted animal husbandry practice in lemur care. *Kuehl*, 161 F. Supp. 3d at 710–11. Isolating lemurs by depriving them of appropriate socialization and proper social housing is "an extremely harmful proceeding," causes these social animals to suffer, and constitutes an ESA "take."[27]

---

[24] J.I. Pollock, *Spatial Distribution and Ranging Behavior in Lemurs*, in The Study of Prosimian Behavior 359, 379–80 (G.A. Doyle & R.D. Martin eds., 1979).
[25] *See* C.B. Mowry & J.L. Campbell, *Nutrition*, in Ring-tailed Lemur (*Lemur catta*) Husbandry Manual 2 (Am. Ass'n of Zoos & Aquariums, 2001).
[26] USDA, Animal & Plant Health Inspection Serv., *Final Report on Env't Enhancement to Promote the Psychological Well-Being of Nonhuman Primates* § II.E (1999).
[27] *Kuehl*, 161 F. Supp. 3d at 710 (internal quotation marks omitted); *see also* 16 U.S.C. § 1538(a)(1)(B), (G); R. Ethan Pride, *Optimal Group Size and Seasonal Stress in Ring-tailed Lemurs* (Lemur catta), 16 Behav. Ecol. 550 (2005)

Tiger Creek further denies the lemurs their ability to engage in an array of complex and diverse behaviors known to their species, such as exploration and foraging, by failing to develop a primate enrichment plan that promotes their psychological well-being. The USDA cited Tiger Creek for this failure in 2021. *See* Exhibit "1", which is a true and correct copy of the USDA Inspection Report dated April 8, 2021.

Tiger Creek's practices, which significantly disrupt the lemurs' normal behavior patterns and cause them to suffer, constitute ongoing "take" under the ESA. *See* 16 U.S.C. § 1538(a)(1)(B), (G); 50 C.F.R. §§ 17.11(h), 17.21(c)(1); *see also Kuehl*, 161 F. Supp. 3d at 713, 718 (finding zoo's treatment of lemurs constituted unlawful "take" in violation of the ESA).

****

These chronic violations of the most basic standards of care demonstrate Tiger Creek is unable to adequately provide for endangered and threatened species at its facility. Please be advised that the conditions set forth herein violate the ESA's prohibition on "take" by harming and/or harassing numerous endangered and threatened species and violate the ESA by transferring members of listed endangered and threatened species without the applicable permits. Unless the violations described herein cease immediately, ALDF will file suit against Tiger Creek under the ESA after the expiration of sixty (60) days. Pursuant to the ESA, ALDF will seek declaratory relief and an injunction against the continued violations, including, but not limited to, requesting that the court order the transfer of each and every affected endangered or threatened animal. ALDF will also seek to recoup its attorneys' fees and litigation costs.

During the sixty (60) day notice period, ALDF is willing to discuss a mutually agreeable remedy for the violations addressed herein. If you are willing to work with ALDF to relocate the animals to a sanctuary, please contact us or have your attorney contact us immediately so we can begin to make the necessary arrangements. Additionally, please direct any and all communications to the undersigned, whose email address and phone number are listed below. If we do not hear from you about this possible resolution, or if Tiger Creek fails to cease its violations of the ESA, please be advised that after sixty (60) days, ALDF intends to file suit to enforce the laws to end the animals' mistreatment and suffering.

****

This letter is also to remind you of your obligation to preserve and retain all evidence that could relate to this potential litigation. You must ensure that you and your principals, agents, employees, partners, associates, subcontractors, and affiliates under your supervision are preserving and retaining all emails, text messages (including all messages exchanged on any

(finding females in groups that were typically small or large for their habit type had higher mean cortisol levels than typical groups).

DYKEMA

messaging platform such as WhatsApp), audiovisual recordings, voice mails, drafts, notes, communications, data, and electronically stored information of any kind that may relate in any way to this matter. Without any limitation, this requires you to preserve all documents related to your acquisition and disposition of animals, all veterinary records, all financial records, all complaints you have received, and all documents or communications which relate in any way to the facts described in this letter. In addition, since the condition of the animals in your care, custody, possession, or control is the central question in this dispute, you are required to preserve and maintain all documents and communications related to their care. This includes, but is not limited to, maintaining a complete and accurate inventory of those animals; maintaining complete and accurate veterinary records of those animals; refraining from disposing of those animals without giving ALDF an opportunity to inspect their condition; and performing a necropsy within twenty-four (24) hours of any of those animals' death, or otherwise allowing ALDF to do so instead.

Please confirm receipt of this letter and that you intend to adhere to our request to preserve evidence, as set forth above. We look forward to your prompt response.

Sincerely,

Enclosures

# EXHIBIT 1



United States Department of Agriculture
Animal and Plant Health Inspection Service

CDIGESUALDO
**2016090000707028** Insp_id

## Inspection Report

NATIONAL FOUNDATION FOR RESCUED ANIMALS
17552 F M 14
TYLER, TX 75706

Customer ID: **7538**
Certificate: **74-C-0418**
Site: 002
TIGER MISSING LINK, INC.

Type: ROUTINE INSPECTION
Date: 08-APR-2021

**2.40(b)(3)** **Critical**

**Attending veterinarian and adequate veterinary care (dealers and exhibitors).**

Accurate and timely communication with a veterinarian does not appear to have occurred for a male serval names Dakari. According to the attending veterinarian, this cat was treated by the facility for a week prior to seeking medical care with the veterinarian. The animal ultimately died. The AV felt the animal should have received veterinary care sooner than it did.

The facility needs to communicate with the attending veterinarians about animal health concerns prior to the animals dying or requiring euthanasia.

To be corrected by: April 26, 2021

**2.75(b)(1)(vi)**

**Records: Dealers and exhibitors.**

Records of acquisition for the following animals were not available for review at the time of this inspection:

Bellatrix (bobcat, acquired/DOB 9/24/19)

Ember (bobcat, acquired/DOB 4/15/20_

Lily (ring-tailed lemur, acquired/DOB 3/19/20)

Dunkin, Sweet Pea, Rocket (Racoons, acquired/DOB 5/28/19)

**Prepared By:** CYNTHIA DIGESUALDO USDA, APHIS, Animal Care

**Date:** 08-SEP-2021

**Title:** VETERINARY MEDICAL OFFICER

**Received by Title:** Facility Representative

**Date:** 08-SEP-2021



United States Department of Agriculture
Animal and Plant Health Inspection Service

CDIGESUALDO
**2016090000707028** Insp_id

## Inspection Report

Whiskey, Tango (foxes, acquired/DOB 4/5/20)

The facility must make, keep, and maintain records or forms which fully and correctly disclose all required information concerning animals other than dogs or cats, purchased, or otherwise acquired, owned, held, leased, or otherwise in his or her possession or under his or her control, or which is transported, sold, euthanized or otherwise disposed of Acquisition and disposition records are necessary to be able to accurately track animals being used in regulated activities to ensure their legal acquisition, proper care, and humane transportation.

To be corrected by: April 26, 2021

**3.81**

**Environment enhancement to promote psychological well-being.**

Facilities that house primates must have an appropriate plan for environment enhancement adequate to promote the psychological well-being of nonhuman primates. The facility has previously developed an environment enhancement program but it was not available at the time of inspection and the facility's current AV has not approved it. The plan must be in accordance with the currently accepted professional standards as cited in appropriate professional journals or reference guides, and as directed by the attending veterinarian. A plan needs to be created and approved by the attending veterinarian.

To be corrected by: May 1, 2021

This inspection and exit interview were conducted with a facility representative.

**Prepared By:** CYNTHIA DIGESUALDO
USDA, APHIS, Animal Care

**Title:** VETERINARY MEDICAL OFFICER

**Date:** 08-SEP-2021

**Received by Title:** Facility Representative

**Date:** 08-SEP-2021



United States Department of Agriculture
Animal and Plant Health Inspection Service

Customer: 7538
Inspection Date: 08-Apr-2021

## Species Inspected

| Cust No | Cert No | Site | Site Name | Inspection |
|---|---|---|---|---|
| 7538 | 74-C-0418 | 002 | TIGER MISSING LINK, INC. | 08-APR-2021 |

| Count | Scientific Name | Common Name |
|---|---|---|
| 000001 | *Macaca mulatta* | RHESUS MACAQUE |
| 000002 | *Panthera leo* | LION |
| 000003 | *Puma concolor* | PUMA / MOUNTAIN LION / COUGAR |
| 000001 | *Leptailurus serval* | SERVAL |
| 000004 | *Lynx rufus* | BOBCAT |
| 000001 | *Leopardus geoffroyi* | GEOFFROY'S CAT |
| 000017 | *Panthera tigris* | TIGER |
| 000002 | *Lemur catta* | RING-TAILED LEMUR |
| 000002 | *Sus scrofa domestica* | DOMESTIC PIG / POTBELLY PIG / MICRO PIG |
| 000002 | *Urocyon cinereoargenteus* | GRAY FOX / GREY FOX |
| 000003 | *Procyon lotor* | RACCOON |
| 000002 | *Chinchilla lanigera* | CHINCHILLA |
| 000001 | *Rabbits* | RABBITS |
| 000041 | **Total** | |

# EXHIBIT 2



**Tibor, the Tiger on November 27, 2017**

# EXHIBIT 3



**Nati, the Tiger on December 24, 2019**

# EXHIBIT 4



**Nati, the Tiger in January of 2020**

# EXHIBIT 5



United States Department of Agriculture
Animal and Plant Health Inspection Service

CDIGESUALDO
**2016090000707030** Insp_id

## Inspection Report

NATIONAL FOUNDATION FOR RESCUED ANIMALS
17552 F M 14
TYLER, TX 75706

Customer ID: **7538**
Certificate: **74-C-0418**
Site: 002
TIGER MISSING LINK, INC.

Type: ROUTINE INSPECTION
Date: 24-AUG-2021

**3.130**

**Watering.**

Several of the pools in various animal enclosures needed to be cleaned. The water was a very dark greenish color.

Neither the sides nor the bottom of the pools could be seen.

Although the animals had clean potable water in their enclosures to drink, allowing the animals access to pools this dirty is a health hazard due to the mosquito larvae, algae overgrowth, and bacteria in the water.

All water receptacles shall be kept clean and sanitary. The facility must ensure the pools are cleaned regularly or empty for the health of the animals.

To be corrected by: Sept 10, 2021

**3.131(a)**

**Sanitation.**

One of the bobcat cages had an excessive accumulation of old feces, hair, and other debris. According to the facility representative, this bobcat will not go into its shift enclosure so only two people are able to go into the enclosure with the bobcat to clean. One of these people was on vacation for the past 10 days.

Enclosures with dirt floors must be spot-cleaned with sufficient frequency to ensure all animals the freedom to avoid contact with excreta, or as often as necessary to reduce disease hazards, insects, pests, and odors. This enclosure is

**Prepared By:** CYNTHIA DIGESUALDO
USDA, APHIS, Animal Care
**Title:** VETERINARY MEDICAL OFFICER

**Date:** 08-SEP-2021

**Received by Title:** Facility Representative

**Date:** 08-SEP-2021



approximately 8'x8'. It is not large enough for the bobcat to avoid a 10-day accumulation of waste and debris.

The bobcat enclosure needs to be cleaned more frequently. Options the facility might consider are: (1) train additional people to work with this bobcat (2) desensitize and train the bobcat to go into his lockdown (3) move the bobcat to an enclosure that is safer and easier to work in if the bobcat will not go into his lockdown.

To be corrected by: Sept 10, 2021

This inspection and exit interview were conducted with facility representatives.

Additional Inspectors:

CODY YAGER, Supervisory Animal Care Specialist

Lemnique Wafer, Assistant Director

**Prepared By:** CYNTHIA DIGESUALDO

USDA, APHIS, Animal Care

**Date:** 08-SEP-2021

**Title:** VETERINARY MEDICAL OFFICER

**Received by Title:** Facility Representative

**Date:** 08-SEP-2021



United States Department of Agriculture
Animal and Plant Health Inspection Service

Customer: 7538
Inspection Date: 24-Aug-2021

## Species Inspected

| Cust No | Cert No | Site | Site Name | Inspection |
|---|---|---|---|---|
| 7538 | 74-C-0418 | 002 | TIGER MISSING LINK, INC. | 24-AUG-2021 |

| Count | Scientific Name | Common Name |
|---|---|---|
| 000001 | *Macaca mulatta* | RHESUS MACAQUE |
| 000002 | *Panthera leo* | LION |
| 000003 | *Puma concolor* | PUMA / MOUNTAIN LION / COUGAR |
| 000001 | *Leptailurus serval* | SERVAL |
| 000004 | *Lynx rufus* | BOBCAT |
| 000001 | *Leopardus geoffroyi* | GEOFFROY'S CAT |
| 000017 | *Panthera tigris* | TIGER |
| 000002 | *Lemur catta* | RING-TAILED LEMUR |
| 000002 | *Sus scrofa domestica* | DOMESTIC PIG / POTBELLY PIG / MICRO PIG |
| 000002 | *Urocyon cinereoargenteus* | GRAY FOX / GREY FOX |
| 000003 | *Procyon lotor* | RACCOON |
| 000002 | *Chinchilla lanigera* | CHINCHILLA |
| 000001 | *Rabbits* | RABBITS |
| 000041 | **Total** | |

# EXHIBIT 6



# USDA-APHIS-Animal Care

## ANIMAL WELFARE COMPLAINT

| Complaint No.<br>AC21-171 | Date Entered:<br>February 19, 2021 | Processed By:<br>Sean Rehurek |
|---|---|---|

| Referred To:<br>CODY YAGER | Reply Due:<br>March 21, 2021 |
|---|---|

**Facility or Person Complaint Filed Against**

| Name:<br>NATIONAL FOUNDATION FOR RESCUED ANIMALS | Customer No.:<br>7538 | License No.:<br>74-C-0418 |
|---|---|---|

| Address:<br>17552 F M 14 | Email Address: |
|---|---|

| City:<br>Tyler | State:<br>TX | Phone No.:<br>903-858-1008 |
|---|---|---|

**Complainant Information**

| Name:<br>(b)(6), (b)(7)(C), (b)(7)(E) | Organization:<br>(b)(6) |
|---|---|

| Address: | Email Address:<br>(b)(6), (b)(7)(C), (b)(7)(E) |
|---|---|

| City: | State: | Phone No.: |
|---|---|---|

| How was the Complaint received?<br>Email |
|---|
| Details of Complaint:<br>See attached. |
| Results: |
| Application Kit Provided:<br>Yes: No: |

| Inspector:<br>NIANET CARRASQUILLO | Date: |
|---|---|
| Reviewed By: | Date: |



**United States Department of Agriculture**

**Animal and Plant Health Inspection Service**

**Animal Care**

**Fort Collins Office**
**2150 Centre Avenue**
**Building B, 3W11**
**Fort Collins, CO 80526**
**Phone: 970-494-7478**

February 19, 2021

[REDACTED]

Dear Complainant,

Thank you for your correspondence dated January 15, 2021. We are reviewing your concerns and assigned tracking number AC21-171. Please allow us enough time (30 to 60 days) to thoroughly look into your concerns. You may submit a request to the Animal and Plant Health Inspection Service (APHIS) Freedom of Information Act (FOIA) office to obtain any publicly available information regarding our review.

FOIA Requests can be submitted three ways:

1. Web Request Form: https://efoia-pal.usda.gov/App/Home.aspx
2. Fax: 301-734-5941
3. US Mail:
   USDA- APHIS- FOIA
   4700 River Road, Unit 50
   Riverdale, MD 20737

Should you have any questions regarding the APHIS FOIA process or need assistance using the Web Request Form **please contact the APHIS FOIA office at 301-851-4102**.

Animal Care is a program within the U.S. Department of Agriculture (USDA) that directs activities to ensure compliance with and enforcement of the Animal Welfare Act and the Horse Protection Act. Animal Care establishes standards of humane treatment for regulated animals and monitors and achieves compliance through inspections, enforcement, education, and cooperative efforts under the Acts.

Please be assured that we will look into your concern(s) and take appropriate action(s).

Thank you for your interest into the humane treatment of these animals.

Sincerely,

Elizabeth Goldentyer, D.V.M.
Deputy Administrator
USDA, APHIS, Animal Care

An Equal Opportunity Provider and Employer



AN INTERNATIONAL ORGANIZATION DEDICATED TO PROTECTING THE RIGHTS OF ALL ANIMALS

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS FOUNDATION

**Washington**
1536 16th St. N.W.
Washington, DC 20036
202-483-PETA

**Los Angeles**
2154 W. Sunset Blvd.
Los Angeles, CA 90026
323-644-PETA

**Norfolk**
501 Front St.
Norfolk, VA 23510
757-622-PETA

January 15, 2021

USDA/APHIS/Animal Care

Via e-mail: animalcare@usda.gov

Re: Request for Investigation of Tiger Creek Animal Sanctuary

Dear Animal Care:

I am writing on behalf of PETA to request that the USDA investigate the National Foundation for Rescued Animals, dba "Tiger Creek Animal Sanctuary" (license no. 74-C-0418) for potentially exposing a tiger cub to the novel coronavirus, in apparent violation of the Animal Welfare Act (AWA).

PETA received reports that a couple visited Tiger Creek and had contact with a tiger cub on December 31, 2020, just a week after announcing on Facebook that "all" members of their household had COVID-19 on December 24, 2020. The original post has since been removed, but was preserved by another page here. The visitor re-posted the photos of their cub interaction at Tiger Creek, after apparently receiving negative comments on their original post. (*See* Exhibit 1.) It is unclear from the photographs posted where this cub interaction occurred, but it appears to be in a living room of someone's home, and not in a standard enclosure.

The CDC has instructed that anyone who has tested positive for COVID-19 should remain isolated from others for 10 days either after symptoms develop or after a positive test. Individuals who believe they may have been exposed to COVID-19 are advised to self-isolate for 14 days. On December 24, 2020, the visitor posted that everyone in their household "now" had the COVID-19 virus. Just 7 days later, at least two members of the household had direct contact with a tiger cub without masks or personal protective equipment, despite the fact that all felids—especially cubs who have vulnerable immune systems—are susceptible to SARS-CoV-2, the virus that causes COVID-19 in humans. Additionally, because the photographs indicate that this interaction might have occurred in someone's living room, it is possible this cub was transported off-site in order to facilitate this encounter with individuals who had recently tested positive for COVID-19.

The USDA has issued guidance advising that all hands-on encounters with big cats should be suspended until it can be assured that humans do not pose any risk of SARS-CoV-2 infection to these animals. Animals should only be exhibited "under conditions consistent with their good health and well-being," but interactions like those in Exhibit 1 expose tigers to potential infection, which is an apparent violation of 9 C.F.R. § 2.131(d)(1). News continues to come forward of captive big cats becoming infected with SARS-CoV-2, including a snow leopard at a Kentucky zoo last month. This concern is still a very real threat to the health and well-being of these animals.

PETA FOUNDATION IS AN OPERATING NAME OF FOUNDATION TO SUPPORT ANIMAL PROTECTION.

AFFILIATES
- PETA U.S.
- PETA Asia
- PETA India
- PETA France
- PETA Australia
- PETA Germany
- PETA Netherlands
- PETA Foundation (U.K.)

Please ensure that the animals at Tiger Creek are being handled in accordance with the AWA and that all of the felids are inspected, including a review of their veterinary records, to ensure that they are receiving adequate veterinary care pursuant to 9 C.F.R. § 2.40.

It is *especially* imperative to confirm that the tiger cub in Exhibit 1, Sitaara, is not showing any signs of COVID-19 and that there is record of frequent veterinary evaluation for symptoms. Failure to conduct frequent evaluations of susceptible felids exposed to constant human handling would be negligent given these unprecedented circumstances, and the USDA must assess the *adequacy* of the veterinary care provided for these animals.

Please hold Tiger Creek and all responsible parties accountable to the fullest extent of the law for any violations that your investigation uncovers. Thank you for your attention to this important matter. Please inform me of the complaint number that your agency assigns to this correspondence.

Very truly yours,



cc:   Dr. Laurie Gage, Big Cat and Marine Mammal Specialist
      (laurie.j.gage@aphis.usda.gov)

**Roadside Zoo News**

January 1 at 7:11 AM ·

Sitaara the tiger cub has now been exposed to COVID-19 due to the gross negligence of Tiger Creek Animal Sanctuary - Tyler, Texas. When she returns to Tiger Creek Animal Sanctuary, she will risk possibly transmitting COVID to the many wildcats and other animals at the facility.

How did this happen? First, Sitaara was born to a shady tiger breeder who took her from her mother and bottle fed her just long enough to sell her to the first person who came along with enough cash. Then she was confiscated from that private party by Grand Prairie Animal Services and Adoption Center who rehomed her. Despite the offers of Wildcat Sanctuary and Big Cat Sanctuary Alliance, Sitaara was rehomed to Tiger Creek Animal Sanctuary, an unaccredited pseudo-sanctuary with so many accusations of fraud they are no longer allowed to operate under a nonprofit in Ohio.

But did Tiger Creek take care of Sitaara? Nope. The first thing they did was immediately use Sitaara to collect donations from the public. Then Tiger Creek sent Sitaara to spend the night with a dog groomer and her family who just recovered from COVID. The family used Sitaara as a photo op for social media likes. This family is also currently caring for a monkey from Tiger Creek, and they're claiming to be a nonprofit and are publicly asking for donations to build an enclosure for the monkey that is legally owned by Tiger Creek Animal Sanctuary.

We can not make this clear enough: ANIMALS ARE NOT ENTERTAINMENT. They aren't here to pass around like toys. Your tiger cub selfie is UGLY and anyone who chooses to exploit animals for their own gain is disgusting. Tiger Creek "sanctuary" is a roadside zoo using public donations to fund their animal neglect and line their wallets. Brian Werner, Emily Owen, Natasha Chab, Josh Smith and anyone else participating in this sham of a sanctuary deserve to be locked in prison right alongside Joe Exotic, Doc Antle, Tim Stark and Jeff Lowe. Unsurprisingly, all of these individuals did business together.

Let's start 2021 out right by putting the REAL animals in cages, in federal prison!

**(972) 237-8575 is the number for Grand Prairie Animal Services. Please call and voice your concerns for Sitaara and ask that she be taken to a true accredited sanctuary, instead of being confined and forced to breed to produce more cubs to fund Tiger Creek pseudo sanctuary **

#TigerKing #TigerCreekAnimalSanctuary #GrandPrairieAnimalServices #roadsidezoo #backyardzoo #PseudoSanctuary #animalneglect #cubpetting #paytoplay #sufferingforselfies #joeexotic #docantle #jefflowe #timstark #BrianWerner #EmilyOwen #NatashaChab #ShutThemDown #LockThemUp #SaveTheAnimals #BigCatSafetyAct #WildcatSanctuary #BigCatSanctuaryAlliance #Sitaara #TigerCub #PETA #USDA #Tyler #Texas #TexasPolice

So I'm not saying our New Years Eve is better than yours.. but our New Years Eve is better than yours

000026





 38

63 Comments 12 Shares

Like Comment Share

000027

(b) (6), (b) (7)(C) is with
Dec 24
Merry Covid...I mean Merry Christmas
Well all 5 of us now have Covid. Doesn't feel very Christmasy around here but we are really trying to stay in good spirits, so Christmas movie marathon it is. Pray for us y'all we are a HOT MESS!
(b) (6), (b) (7)(C)

**Roadside Zoo News**
January 1 at 7:11 AM ·

Like Comment Share

rite a comment...

**Roadside Zoo News**
January 1 at 7:11 AM ·

3

Like Comment Share

rite a comment...

000029

is with (b) (6), (b) (7)(C).

January 1 at 9:51 AM ·

Reposting because we did nothing wrong.

Because we support protecting and rescuing these beautiful endangered creatures!

We stand for Animal Right!
Go support Tiger Creek! If you can donate to their fight to save these babies!




355 35 Comments 1 Share

Like Comment Share

000030

# EXHIBIT 7

 **Emily Owen** is with **Natasha Chab** and **Shelby Cameron** at **Tiger Creek Animal Sanctuary - Tyler, Texas**.

Jul 23, 2020 ·

Meet our #hotmess #monkeymamas

139 8 Comments

Like Comment Share

**Emily Owen**

Jul 22, 2020 ·