IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ANIMAL LEGAL DEFENSE FUND, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL FOUNDATION FOR RESCUED ANIMALS D/B/A TIGER CREEK SANCTUARY, a non-profit corporation, *et al.*,<br><br>Defendants. | § § § § § § § § § § § § § § § § | Case No. 6:22-cv-97-JDK |

**MEMORANDUM OPINION AND ORDER ON
MOTION TO DISMISS AND MOTION TO STRIKE**

This case alleges violations of the Endangered Species Act, 16 U.S.C. §§ 1531, *et seq.* ("ESA"). Defendants seek to dismiss the complaint for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1), or alternatively, for failure to state a claim under Rule 12(b)(6). Docket No. 10 at 1. Defendants also move to strike evidence submitted by Plaintiff in responding to the dismissal motion. Docket No. 18 at 1.

As explained below, the Court concludes that Plaintiff has adequately alleged Article III standing with respect to Claims I and II, and has properly stated those claims against Defendants under the ESA. The Court thus **DENIES** Defendants' motion to dismiss those counts. However, because Plaintiff has failed to allege

1

standing to bring Count III, the Court **GRANTS** the motion to dismiss that count. The Court also **DENIES** Defendants' motion to strike (Docket No. 18).

## I. Background[1]

Plaintiff Animal Legal Defense Fund ("ALDF") is a non-profit organization whose mission is protecting endangered and threatened animals. Docket No. 1 ¶ 6. Defendant, the National Foundation for Rescued Animals ("Tiger Creek"), operates a 173-acre wildlife preserve and animal sanctuary in Tyler, Texas, exhibiting dozens of lions and tigers, as well as ring-tailed lemurs and other animals. *Id.* ¶ 4; Docket No. 10 at 2. Defendant Brian Ferris founded Tiger Creek and served as its executive director until 2021, when Defendant Emily Owen took over the role. Docket No. 1 ¶ 2; Docket No. 10 at 2.

ALDF brings this action pursuant to the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g), alleging that Defendants "have eviscerated the big cats' population at Tiger Creek" through haphazard management and an inability to provide timely and adequate veterinary care. Docket No. 1 ¶¶ 1–2. ALDF alleges three violations of the ESA, a statute seeking to protect federally designated "endangered" and "threatened" species, 16 U.S.C. § 1531.[2]

---

[1] When considering a motion to dismiss under Rule 12, the Court accepts "all well-pleaded facts as true" and views them "in the light most favorable to the plaintiff." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 109 (2022).

[2] The lions, tigers, and ring-tailed lemurs living at Tiger Creek are listed as endangered. 50 C.F.R. § 17.11 (2022). ALDF also complains about the improper care of pumas, servals, and bobcats at Tiger Creek, Docket No. 1 ¶¶ 4, 7, 26, 35, 42, 49, but these species are not listed as endangered or threatened, 50 C.F.R. § 17.11, and thus do not receive ESA protection. *Cf. Shields v. Norton*, 289 F.3d 832, 834 (5th Cir. 2002).

Count I alleges that Defendants have "taken" endangered or threatened species by "harass[ing]" or "harm[ing]" them in violation of 16 U.S.C. § 1538(a)(1)(B). Docket No. 1 ¶¶ 87–92. Count II alleges Defendants unlawfully "possess" ESA-protected animals in violation of § 1538(a)(1)(D). *Id.* ¶¶ 93–95. And Count III alleges Defendants violated the ESA's prohibition against interstate transfer of protected animals in the course of commercial activity. *Id.* ¶¶ 96–104; 16 U.S.C. § 1538(a)(1)(E).

Defendants now move to dismiss the complaint under Rules 12(b)(1) and 12(b)(6), Docket No. 10, and to strike certain evidence submitted by ALDF, Docket No. 18.

## II. Motion to Dismiss Under Rule 12(b)(1)

Defendants first argue that ALDF lacks constitutional standing. Docket No. 10 at 3; FED. R. CIV. P. 12(b)(1). Article III of the U.S. Constitution provides that federal courts may decide only "cases" or "controversies[.]" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). "[A]n essential and unchanging part of the case-or-controversy requirement of Article III" is that the plaintiff has standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The standing requirement is not subject to waiver and requires strict compliance. *E.g., Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996).

Article III standing requires a plaintiff to allege: (1) he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury

3

will be redressed by a favorable decision." *El Paso Cnty. v. Trump*, 982 F.3d 332, 336 (5th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

ALDF bears the burden of establishing standing "'with the manner and degree of evidence required at the successive stages of the litigation.'" *Barilla v. City of Hous.*, 13 F.4th 427, 431 (5th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561). To survive a motion to dismiss, a plaintiff "must allege facts that give rise to a plausible claim of [its] standing." *Id.* In assessing whether ALDF has met this standard, "we take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017).

Here, Defendants argue that ALDF lacks standing because "it does not have a cognizable injury in fact" and cannot "demonstrate causation and redressability." Docket No. 10 at 4, 8. The Court addresses each argument in turn.

### A. Injury in Fact

To allege a cognizable injury under the ESA, ALDF must allege harm to a protected animal and "injury to those who enjoy them." *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) (plaintiff sufficiently alleged an injury under the ESA by alleging "death to cranes [an ESA-protected species] and injury to those who enjoy them"); *see also Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) (a plaintiff must allege a "connection" to a "particular" ESA-protected

4

animal and "aesthetic or recreational interest" that is impaired by defendant's conduct). Defendants argue that ALDF has alleged nothing more than a general interest in endangered animals and "has not pleaded any connection on its own behalf to a particular animal at the Sanctuary." Docket No. 10 at 4–8.

ALDF, however, asserts associational standing, and it has adequately pleaded that several of its members have a connection with the animals at Defendants' Sanctuary and are harmed by Defendants' mistreatment of them. Docket No. 1 ¶¶ 7, 30–84. ALDF alleges: "Several ALDF members have visited and worked at Tiger Creek, where they observed, had daily interactions with, and developed aesthetic and emotional connections to the animals there, including the tigers, lions, ring-tailed lemurs, pumas, servals, and bobcats." Docket No. 1 ¶ 7. These "members became distressed and upset due to the animal mistreatment and suffering that they witnessed," and the "inhumane and inadequate conditions prevent ALDF members who worked at Tiger Creek from viewing and enjoying the animals kept there, both during and after their employment at Tiger Creek." *Id.* ALDF also alleges that if the animals received better treatment or were transferred to proper sanctuaries, ALDF's members would visit the animals again. *Id.* ¶ 8. And, finally, ALDF identifies dozens of injured or deceased animals by name with which its members previously worked and developed "emotional connections." Docket No. 1 at ¶¶ 30–84 (listing specific animals and their injuries).

These allegations sufficiently state an injury in fact. An association like ALDF "ha[s] standing to assert the claims of its members even where it has suffered no

5

injury from the challenged activity." *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 504 (5th Cir. 2021) (cleaned up); *see also Aransas Project*, 775 F.3d at 646, 648 (holding that environmental conservation organization had standing to bring action under the ESA "on behalf of itself and its members"). And the complaint sufficiently alleges that ALDF's members have suffered a cognizable injury.³ *See, e.g., Lujan*, 504 U.S. at 567 (noting that those who work with animals suffer "esthetic" injury when animals are harmed unlawfully); *Aransas Project*, 775 F.3d at 648 (expressing "little doubt" that organization has suffered cognizable injury under the ESA by alleging deaths to whooping cranes and aesthetic injury to members who regularly observed them); *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 691 (5th Cir. 2010) (same regarding birding enthusiasts of golden-cheeked warblers who alleged that birds would be harmed and driven from the area because of defendant's actions); *Sierra Club v. Madigan*, 1992 WL 501733, at *2 (E.D. Tex. July 28, 1992) (same regarding enthusiasts of red-cockaded woodpeckers); *Graham v. San Antonio Zoological Soc'y*, No. 5:15-cv-01054-XR, ECF No. 16 at *1 n.1 (W.D. Tex. 2017) (same regarding regular viewers of a mistreated captive elephant); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 556 (5th Cir. 1996) (holding that regular users of Galveston Bay had alleged aesthetic injury under the

---

³ To establish associational standing, ALDF must allege that (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). It is undisputed that ALDF has alleged the second and third prongs.

6

Clean Water Act by alleging that proposed discharges would reduce their recreational enjoyment of the Bay).

## B. Causation and Redressability

A plaintiff's injury must be "fairly traceable" to the defendant's action and "redress[able] by a favorable decision." *El Paso Cnty.*, 982 F.3d at 336. Defendants argue that ALDF failed to allege "the necessary connection" between its "take" and "possess" claims and its "purported aesthetic injury." Docket No. 10 at 9–10. Defendants also assert that "[t]here is no causal connection between the alleged unlawful transfer and Plaintiff's injury." *Id.* at 10.

Defendants are wrong on the take and possess claims (Counts I and II). ALDF alleges that Defendants have "taken" and unlawfully "possessed" endangered species by mistreating them, failing to provide them with proper veterinary care, and subjecting them to inhumane conditions—and that this conduct "prevent[s] ALDF members who worked at Tiger Creek from viewing and enjoying the animals kept there." Docket No. 1 ¶¶ 7, 9, 28. ALDF seeks a declaration that Defendants are violating the ESA and an injunction enjoining them from "engaging in operations and activities" that cause an unlawful take or possession of the animals at Tiger Creek. Docket No. 1 at Part VIII. ALDF has thus properly alleged causation, and the relief ALDF seeks would adequately redress its injury. *See, e.g.*, *Hill v. Coggins*, 867 F.3d 499, 506 (4th Cir. 2017) ("Having found that Plaintiffs satisfy the injury in fact element, the second and third standing elements [for their "take" and "possession" claims] easily follow. The Zoo is maintaining its bears in the setting that Plaintiffs complain of, and so Plaintiffs' alleged aesthetic injury is fairly traceable to the Zoo.");

7

*Graham*, No. 5:15-cv-01054-XR, ECF No. 16 at *1 n.1 (finding standing on the "take" and "possession" counts).

Defendants, however, are correct regarding ALDF's unlawful transfer claim (Count III). ALDF alleges that Defendants have transported endangered animals without the proper permits, "in violation of the 'transfer' provisions of the ESA, 16 U.S.C. §§ 1538–39." Docket No. 1 ¶ 97. And it seeks a declaration that Defendants have violated those provisions and an injunction enjoining Defendants from transporting animals unlawfully. *Id.* at Part VIII. But ALDF fails to state how it is injured by the alleged unlawful transportation and how a declaration and injunction would redress any such injury. Indeed, the injury noted above—lack of aesthetic enjoyment—occurred after the animals were transported to Tiger Creek, and it would presumably be the same injury regardless of the method or lawfulness of transportation. *See George v. Farmers Elec. Co-op., Inc.*, 715 F.2d 175, 178 (5th Cir. 1983) (no standing where plaintiff would have suffered the same injury even if it obtained the relief sought); *Cady v. Morton*, 527 F.2d 786, 798 (9th Cir. 1975) ("In either event, the injuries of which the appellants complain are the same; in neither event have the appellants alleged an injury in fact attributable to [this statutory violation].").

ALDF argues that the unlawful transport brought animals to Tiger Creek, where ALDF members later viewed them and experienced injury. Docket No. 14 at 15. And it cites a case suggesting that similar plaintiffs "might" have standing for an interstate transfer. *Id.* at 15 & n.44 (citing *Elephant Just. Project v. Woodland*

8

*Park Zoological Soc'y, Inc.*, 2015 WL 12564233, at *4 (W.D. Wash. Apr. 7, 2015)). But that case was brought to enjoin a *proposed* transfer during which the elephants "will suffer grave harm or death." *Elephant Just. Project*, 2015 WL 12564233, at *5. ALDF has not made that allegation here.

ALDF also argues that Defendants' illegal transports strain the Sanctuary's resources and ability to provide adequate care, adding to its members' injuries. Docket No. 1 ¶ 34. But ALDF fails to allege how an unlawful transport, as opposed to a lawful one, causes such injury or how enjoining such transports would redress it. *See George*, 715 F.2d at 178.

\*    \*    \*    \*

ALDF has sufficiently pleaded the Article III standing requirements for Counts I and II, but has failed to do so for Count III. Accordingly, the Court **DENIES** Defendants' motion to dismiss Counts I and II, and **GRANTS** the motion to dismiss Count III.

### III. Motion to Dismiss Under Rule 12(b)(6)

Defendants alternatively argue that the claims should be dismissed under Rule 12(b)(6) for failing to allege "an ESA 'take.'" Docket No. 10 at 11–13. They also contend that the claims against Defendants Ferris and Owen should be dismissed because "there is no basis to disregard the Sanctuary's corporate structure." *Id*. at 13. Both arguments fail.

#### A. ESA "Take"

The ESA prohibits the "take" of endangered or threatened species, as well as the unlawful possession of any species "taken." 16 U.S.C. § 1538(a)(1)(B), (D). "Take"

9

is defined as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect [a federally designated endangered or threatened species], or to attempt to engage in any such conduct." *Id.* § 1532(19). The parties agree that "harass" and "harm" are the relevant terms here. Docket No. 1 ¶ 21; Docket No. 10 at 12. "Harm" means "an act which actually kills or injures wildlife." 50 C.F.R. § 17.3. And "harass" means "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns, which include, but are not limited to, breeding, feeding, or sheltering." *Id.*

Defendants acknowledge that the complaint "generally describes instances in which animals at the Sanctuary have become ill or injured." Docket No. 10 at 12. But they claim the complaint lacks "credible facts supporting the otherwise conclusory statements" that Defendants "harmed" or "harassed" the animals. *Id*. Not so. The complaint is replete with specific allegations of how Defendants have committed acts "which actually kill[] or injure[]" the animals in their care. Here are just a few examples:

> ¶ 28: Defendants have injured, wounded, or killed "at least nine big cats in the past five years" by their substandard care and husbandry practices.
>
> ¶ 29: Defendants have "delayed providing timely and adequate veterinary care to sick and/or injured animals," which resulted in animal suffering and death.
>
> ¶ 30: In November 2017, Defendants failed to provide a male tiger named Tibor "any veterinary care in the 48 hours he laid immobile up to his death."

¶ 31: In early 2018, Defendants failed to provide veterinary care for a tiger named Lexie whose "prolonged immobility in urine-soaked hay caused wounds to fester on her legs" and resulted in her death.

The list goes on, detailing Defendants' failure to provide adequate and timely veterinary care, implement proper nutrition protocols, and ensure safe and sanitary environments that caused or contributed to the deaths of specifically identified tigers, lions, and other animals in their care. *See, e.g., id.* at ¶¶ 30–80.

That is sufficient to allege an unlawful take under the ESA. *See, e.g., PETA v. Tri-State Zoological Park of W. Md., Inc.*, 2018 WL 434229, at *7 (D. Md. Jan. 16, 2018) (denying motion to dismiss where plaintiff alleged inadequate housing, unsanitary conditions, improper nutrition, and untimely veterinary care); *Kuehl v. Sellner*, 161 F. Supp. 3d 678, 713–18 (N.D. Iowa 2016), *aff'd*, 887 F.3d 845 (8th Cir. 2018) (finding an ESA take following a bench trial where evidence showed lemurs suffered from improper veterinary care, a lack of sanitation, and social isolation); *United States v. Lowe*, 2021 WL 149838, at *11 (E.D. Okla. Jan. 15, 2021) (issuing a preliminary injunction where the plaintiff could "likely demonstrate that Defendants 'harmed' or 'harassed'" tigers by providing substandard care and sanitation).

Defendants' motion to dismiss on this basis is **DENIED**.

### B. Individual Defendants

Defendants also seek to dismiss Ferris, the founder and a former director of Tiger Creek, and Owen, the Chairman and Executive Director of Tiger Creek, because "there is no basis to disregard the Sanctuary's corporate structure and bring actions directly against these former and current corporate officers." Docket No. 10 at 13–14.

Defendants claim that ALDF must "pierce the Sanctuary's corporate structure" to sue Ferris and Owens directly, and ALDF "makes no attempt" to do so. *Id.* at 14.

To be sure, Wyoming law shields members of a nonprofit corporation's board from individual liability for "any actions, inactions or omissions by the nonprofit corporation." WYO. STAT. ANN. § 17-19-830.[4] But it also plainly provides that "[t]his subsection does not affect *individual liability* for intentional torts or illegal acts." *Id.* (emphasis added); *see also Wallop Canyon Ranch, LLC v. Goodwyn*, 2015 WY 81, ¶ 27, 351 P.3d 943, 951 (Wyo. 2015) (holding that "[o]fficers, directors and other agents [of a corporation] may be held individually liable for personal participation in tortious acts even though performed solely for the benefit of the corporation, and such liability does not require that the 'corporate veil' be pierced."); *cf. Woodbury v. Mount Carmel Youth Ranch*, 2005 WL 8155941, at *3 (D. Wyo. Dec. 8, 2005) (holding that board members were not individually liable because "Plaintiff has not succeeded in showing any intentional tort or illegal act which would remove [them] from the protection of the statute.").

And here, the complaint alleges that Ferris and Owen themselves engaged in illegal acts by mistreating protected wildlife in violation of the ESA. *See, e.g.*, Docket No. 1 ¶ 2 ("Each death resulted from the haphazard management of Defendants Emily Owen or Brian Werner Ferris . . . ."); *id.* ¶ 29 ("Animals have frequently suffered and died as a result of Defendants' refusal to authorize timely or appropriate veterinary care for the animals."); *id.* ¶ 55 ("Defendants have denied endangered and

---

[4] It is undisputed that Tiger Creek is incorporated under the laws of the State of Wyoming and that Wyoming law governs this issue. Docket No. 10 at 14; Docket No. 14 at 25.

threatened animals an adequate and appropriate diet, thus interfering with their normal feeding behaviors and resulting in injury and the risk of further injury to endangered or threatened animals.").

Defendants' motion to dismiss on this basis is thus **DENIED**.

### IV. Motion to Strike

Defendants also ask the Court to strike ALDF's response in its entirety because ALDF attached affidavits with additional factual support for standing. Docket No. 18. Defendants contend that these affidavits are improper, and because ALDF cites them in its response, the entire response should be stricken.

But here, the parties agree that Defendants' challenge is a facial attack on jurisdiction based only on the allegations in the complaint. Docket No. 18 at 1; Docket No. 19 at 1. And thus the Court "simply considers 'the sufficiency of the allegations in the *complaint* because they are presumed to be true.'" *PlainsCapital Bank v. Rogers*, 715 F. App'x 325, 328 (5th Cir. 2017) (emphasis added). The Court need not, and did not, consider the evidence attached to and included in ALDF's response. *See id.*; *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 209 (S.D. Tex. 2008) ("Because the motion to dismiss under Rule 12(b)(1) was not submitted with additional evidence, analysis is properly limited to the pleadings, attachments, and matters appropriate for judicial notice.").

Defendants' motion to strike is thus **DENIED** as moot.

### V. Conclusion

As stated above, Defendants' motion to dismiss (Docket No. 10) is **DENIED** as to Counts I and II and **GRANTED** as to Count III. Defendants' motion to strike

13

(Docket No. 18) is **DENIED** as moot. Accordingly, Count III is dismissed without prejudice. *See Williams v. Morris*, 614 F. App'x 773, 774 (5th Cir. 2015) (a dismissal for lack of standing "should be without prejudice").

So **ORDERED** and **SIGNED** this **9th** day of **December, 2022.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE