IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ANIMAL LEGAL DEFENSE FUND, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:22-cv-97-JDK |
| NATIONAL FOUNDATION FOR RESCUED ANIMALS D/B/A TIGER CREEK SANCTUARY, et al., | § § § § § | |
| Defendants. | § § § | |

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS**

In this lawsuit, Plaintiff Animal Legal Defense Fund alleges that Defendants National Foundation for Rescued Animals ("Tiger Creek"), Brian Ferris, and Emily Owen are violating the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, *et seq.*, by mistreating lions and tigers—"Big Cats"—they hold in captivity. Docket No. 1. Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) based on a new federal law prohibiting certain forms of private Big Cat ownership. Docket No. 40.

As explained below, the Court **DENIES** Defendant's motion.

I.

Plaintiff Animal Legal Defense Fund ("ALDF") is a non-profit organization whose mission is to protect endangered and threatened animals. Docket No. 1 ¶ 6. Defendants operate a 173-acre wildlife preserve and animal sanctuary in Tyler,

1

Texas, which exhibits dozens of Big Cats, ring-tailed lemurs, and other animals. *Id.* ¶ 4.

ALDF alleges that Defendants' substandard veterinary care, sanitation, and feeding have contributed to deaths and injuries of several Big Cats at Tiger Creek. *Id.* ¶¶ 28–86. For example, ALDF alleges:

> ¶ 28: Defendants have injured, wounded, or killed "at least nine big cats in the past five years" by their substandard care and husbandry practices.
>
> ¶ 29: Defendants have "delayed providing timely and adequate veterinary care to sick and/or injured animals," which resulted in animal suffering and death.
>
> ¶ 30: In November 2017, Defendants failed to provide a male tiger named Tibor "any veterinary care in the 48 hours he laid immobile up to his death."
>
> ¶ 31: In early 2018, Defendants failed to provide veterinary care for a tiger named Lexie whose "prolonged immobility in urine-soaked hay caused wounds to fester on her legs" and resulted in her death.

ALDF alleges that these actions violated three provisions of the ESA.[1] ALDF brings this action pursuant to the citizen-suit provision of the ESA, § 1540(g)(1)(A), and seeks to enjoin Defendants from acquiring endangered or threatened species or otherwise violating the ESA. Docket No. 1 at 24.

---

[1] Defendants previously moved to dismiss the complaint for lack of Article III standing. Docket No. 10 at 1. The Court granted the motion only as it pertained to ALDF's lack of standing to sue for a violation of § 1538(a)(1)(E), which prohibits the interstate transport of endangered species of fish or wildlife. Docket No. 31 at 8–9. The Court denied the motion in all other respects.

## II.

Defendant's motion involves three separate federal statutes that govern captive Big Cats—the Lacey Act, the Animal Welfare Act, and the ESA—as well as a new law amending the Lacey Act, the Big Cat Public Safety Act.[2]

**1.** The Lacey Act was enacted in 1900 and established a licensing scheme for trading any "wild animal or bird." Lacey Act, ch. 553, 31 Stat. 187 (1900) (codified as amended at 16 U.S.C. §§ 3371–3378 and 18 U.S.C. § 42). In its present form, the Lacey Act primarily governs the trade of any species of "fish or wildlife or plant," including by: (1) requiring that transporters of packages containing wildlife properly "mark," or "label[]" the package, 16 U.S.C. § 3372(b); and (2) prohibiting persons from dealing in "fish or wildlife or plant taken, possessed, transported, or sold," in violation of any federal, state, or tribal law, *id.* § 3372(a). The Lacey Act charges several cabinet secretaries with its implementation. *Id.* § 3375. Generally, the U.S. Fish and Wildlife Service, an agency within the Department of the Interior, takes the lead on enforcement.

**2.** In 1966, Congress enacted the Animal Welfare Act ("AWA") to "regulate . . . dogs, cats, and certain other animals" used for "research or experimentation" purposes. Act of Aug. 24, 1966, Pub. L. No. 89-544, § 1, 80 Stat. 350, 350 (1966). As amended, the AWA now also provides standards for the "humane care and treatment" of exhibition animals like those found in "carnivals, circuses, and

---

[2] For an overview of the history and interplay of these three laws, see generally Carney Anne Nasser, *Welcome (Back) to the Jungle: The Status of America's Tiger Crisis*, 18 ANIMAL & NAT. RES. L. REV. 1 (2022).

3

zoos," whether operated "for profit or not." 7 U.S.C. § 2131(1); *id.* § 2132 (defining "exhibitor"). The AWA directs the U.S. Department of Agriculture to issue licenses to exhibitors of animals that comply with certain regulatory standards of care. *Id.* § 2133.

3.  Seven years after the AWA, Congress enacted the ESA to conserve "endangered and threatened species of fish, wildlife, and plants . . . ." Endangered Species Act of 1973, Pub L. No. 93-205, § 1, 87 Stat. 884. The ESA directs the Secretary of the Interior to determine whether a species is endangered or threatened. *Id.* § 1533(a)(1); *see also* 50 C.F.R. § 17.11(h) (2022) (list of endangered or threatened species). And the ESA prohibits the "take" of any species so designated. § 1538(a)(1)(B). "Take" is a term of art under the ESA, defined to mean "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id.* § 1532(19). The ESA further prohibits the possession of any "taken" endangered species. *Id.* § 1538(a)(1)(D). Unlike either the Lacey Act or the AWA, the ESA includes a private right of action by which any person may enforce its provisions. *Id.* § 1540(g).

4.  After ALDF filed this lawsuit, Congress enacted the Big Cat Public Safety Act ("the Big Cat Act"), which amended the Lacey Act. Pub. L. No. 117-243, 136 Stat. 4371 (codified at 16 U.S.C. §§ 3371–3374, 3376). The Big Cat Act generally makes it unlawful for any person to "import, export, transport, sell, receive, acquire, or purchase" in interstate commerce or "breed or possess" any "prohibited wildlife species." 16 U.S.C. § 3372(e)(1)(A)–(B). Tigers and lions, like those kept at Tiger

Creek, fall within the Big Cat Act's definition of prohibited wildlife species. *Id.* § 3371(h).

The Big Cat Act, however, permits licensees to hold and exhibit such wildlife to the public under certain circumstances. For example, the statute's prohibition on Big Cat ownership does not apply to:

> (A) an entity exhibiting animals to the public under a Class C license from the Department of Agriculture, or a Federal facility registered with the Department of Agriculture that exhibits animals, if such entity or facility holds such license or registration in good standing and if the entity or facility—
>
> (i) does not allow any individual to come into direct physical contact with a prohibited wildlife species, unless that individual is [a trained professional employee, a licensed veterinarian, or directly supporting conservation programs]—
>
> . . . and
>
> (ii) ensures that during public exhibition of a lion (Panthera leo), tiger (Panthera tigris), leopard (Panthera pardus), snow leopard (Uncia uncia), jaguar (Panthera onca), cougar (Puma concolor), or any hybrid thereof, the animal is at least 15 feet from members of the public unless there is a permanent barrier sufficient to prevent public contact;

§ 3372(e)(2)(A). The U.S. Department of Agriculture issues Class C licenses, which are predicated on compliance with the AWA. 9 C.F.R.§ 2.3(a) (2023).

Defendants argue they qualify for this exception under the Big Cat Act because they hold a Class C license and "should" soon be determined to meet the exception's additional requirements. Docket No. 40 at 12. Defendants argue that the passage of the Big Cat Act "relieves this Court of subject matter jurisdiction over [ALDF's] ESA claims." *Id.* at 4. Accordingly, Defendants again move to dismiss the action.

## III.

Motions filed under Federal Rule of Civil Procedure 12(b)(1) challenge the subject matter jurisdiction of the district court to hear a case. FED. R. CIV. P. 12(b)(1). "In assessing jurisdiction, the district court is to accept as true the allegations and facts set forth in the complaint." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

Defendants make two arguments in their motion to dismiss. First, Defendants argue this Court "lacks jurisdiction" over ALDF's ESA suit because the Big Cat Act "supersede[s]" the ESA. Docket No. 40 at 5, 9–12. Second, they argue the claims against individual Defendants Brian Ferris and Emily Owen are moot because the Big Cat Act provides ALDF's requested relief against them. *Id.* at 10.

The Court addresses each argument in turn.

## A.

Defendants first argue that the Court "lacks jurisdiction to entertain a citizen suit under the ESA" because the recently enacted Big Cat Act "established a *new* federal regulatory scheme," which "[r]eplaces" and "supplants the statutory protections" found in the ESA. Docket No. 40 at 7–8.

As an initial matter, Defendants' reference to "jurisdiction" is odd, as the Court has subject matter jurisdiction under 28 U.S.C. § 1331, regardless of whether ALDF can maintain a viable ESA claim. *See generally Verizon Md., Inc. v. Pub. Serv.*

6

*Comm'n of Md.*, 535 U.S. 635, 642–43 (2002) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . . ."); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

In any event, the Court "regard[s] each of Congress's statutes as effective unless either 'intention to repeal' one of them is 'clear and manifest' or the two laws are 'irreconcilable.'" *All. for Hippocratic Med. v. Food & Drug Admin.*, 2023 WL 2913725, at *20 (5th Cir. Apr. 12, 2023) (quoting *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020)). And here, Congress's intent to supersede the ESA is not "clear and manifest" in the text of the Big Cat Act. The Big Cat Act does not mention the ESA at all, much less eliminate the ESA's private cause of action codified at 16 U.S.C. § 1540(g). In fact, the Big Cat Act amended the Lacey Act, which states that nothing therein "shall be construed as . . . repealing, superseding, or modifying any provision of Federal law." § 3378(c).

Nor is the Big Cat Act "irreconcilable" with the ESA such that it implicitly repealed the ESA. The Big Cat Act prohibits transporting or possessing certain "prohibited wildlife species," with exceptions for licensees as discussed above. *Id.* § 3372(e)(1)–(2). The ESA, in contrast, covers "endangered species" of "fish or wildlife," and makes it unlawful to "harass, harm, pursue, hunt, shoot, wound, kill" or otherwise "take" them, as well as prohibiting the possession of animals so taken. *Id.* § 1538(a)(1). Although both statutes govern Big Cats, they are not irreconcilable because they regulate different activities and impose different standards. *POM*

*Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 115 (2014) (holding that agency enforcement of the Federal Food, Drug, and Cosmetic Act's prohibition on mislabeling foods did not displace private suits to enforce similar provisions of the Lanham Act where the statutes imposed "different requirements and protections"); *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144 (2001) (declining to find implicit repeal where statutes posed distinct standards); *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding 42 U.S.C. § 1981 did not repeal Title VII despite overlap because each provided coverage the other lacked). A regulated entity or individual, moreover, can comply with both statutes, further demonstrating the two statutes' compatibility. *See N.Y. Republican State Comm. v. Sec. & Exch. Comm'n*, 927 F.3d 499, 509 (D.C. Cir. 2019) (concluding agencies could enforce parallel statutes because both statutes "can be fully implemented without conflict"); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 731–32 (7th Cir. 2004) (finding compatibility between "old and new remedial systems" where "people can comply with both"); *cf. Hobbs v. United States ex rel. Russell*, 209 F.3d 408, 412 (5th Cir. 2000) (finding irreconcilable conflict where one statute permitted the Internal Revenue Service to disclose tax return information during a judicial proceeding but another statute subjected it to liability for disclosure).

    Defendants contend they hold a Class C license permitting them to possess Big Cats under the Big Cat Act (and by extension, the AWA) and cannot be held in violation of the ESA. Docket No. 40 at 10–12. Not so. As one court explained, the ESA "provides for *separate* and *heightened* protections" for endangered species than

8

does the AWA. *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 2018 WL 434229, at *6 (D. Md. Jan. 16, 2018) (emphasis added). And thus exhibitors like Defendants, who maintain full compliance with the AWA, may nonetheless be in violation of the ESA's distinct standards. *Id.*; *see also Kuehl v. Sellner*, 887 F.3d 845, 852 (8th Cir. 2018) (rejecting the argument that defendant was "exempt" from ESA by virtue of its AWA compliance); *Graham v. San Antonio Zoological Soc'y*, 261 F. Supp. 3d 711, 746–47 (W.D. Tex. 2017) (same).

The Big Cat Act regulates *who* may lawfully own Big Cats; the ESA, by contrast, governs *how* Big Cats (and all endangered species) must be treated. Even though both statutes impose standards by which Defendants must abide, their standards are distinct, and thus there is no conflict between the two. *J.E.M. Ag Supply, Inc.*, 534 U.S. at 144 (giving effect to "two overlapping statutes" that "offer dual protection[s]" where they reached different cases). "When two statutes complement each other," as here, "it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *POM Wonderful LLC*, 573 U.S. at 115.

Accordingly, the Big Cat Act does not replace or supplant the ESA.

### B.

Defendants also argue that the Big Cat Act moots the claims against the individual Defendants, Brian Ferris and Emily Owen, because they "do not privately own any Big Cats and therefore are not eligible for any exemption allowing for future private Big Cat ownership under the [Act]." Docket No. 40 at 10. Defendants contend

9

that ALDF's "requested injunctive relief seeking to prevent [Ferris and Owen] from possessing or owning Big Cats is therefore moot."

The Court disagrees. A case becomes moot only when the issues presented are no longer "live" or when the parties lack a legally cognizable interest in the outcome of the case. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). And here, at this stage of the proceeding, the Court accepts as true ALDF's allegation that Ferris and Owen "possess[]" ESA-protected species, including tigers and lions. Docket No. 1 ¶ 94. Further, ALDF seeks other forms of relief against Ferris and Owen than merely an injunction prohibiting possession or ownership. In their complaint, for example, ALDF seeks to prohibit all Defendants, including Ferris and Owen, "from engaging in operations and activities that cause the take of endangered and/or threatened species at Tiger Creek." *See* Docket No. 1 at 24. That's enough to keep the claims against them alive. *E.g., Dierlam v. Trump*, 977 F.3d 471, 476–77 (5th Cir. 2020) ("[E]ven when the primary relief sought is no longer available, being able to imagine an alternative form of relief is all that's required to keep a case alive").

## IV.

For the reasons stated above, the Court **DENIES** Defendants' motion to dismiss (Docket No. 40).

So **ORDERED** and **SIGNED** this **7th** day of **June, 2023.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE